**PHILADELPHIA INDEMNITY INSURANCE COMPANY a/s/o Mirsan, L.P., d/b/a Sienna Ridge Apartments, Appellant**

v.

**Carmen A. Carmen A. WHITE, Appellee.**

No. 04–12–00721–CV.

Court of Appeals of Texas, San Antonio.

Dec. 18, 2013.

Paul Vigushin, Law Offices of Paul Vigushin, P.C., Dallas, TX, for Appellant.

Sheryl Gray Rasmus, Rasmus Law Firm, Austin, TX, for Appellee.

Sitting: SANDEE BRYAN MARION, MARIALYN BARNARD, and LUZ ELENA D. CHAPA, Justices.

## OPINION

Opinion by: SANDEE BRYAN MARION, Justice.

Appellant Philadelphia Indemnity Insurance Company ("Philadelphia"), as subrogee of Mirsan, L.P. d/b/a Sienna Ridge Apartments, sued appellee Carmen White for damages related to an apartment fire. Philadelphia alleged White caused the damage to her apartment and several adjacent apartments and she was liable for all damages according to a provision in her apartment lease. After a jury found in favor of Philadelphia, White moved for a judgment notwithstanding the verdict ("JNOV"), and the trial court granted the motion. We affirm.

## BACKGROUND

After completing graduate school out-of-state, White obtained employment in San Antonio, Texas. Her friend recommended White live in her apartment complex, Sienna Ridge Apartments. White never visited the complex, but handled her rental agreement via telephone and email before moving to San Antonio. Although White did not negotiate the terms of the lease or hire an attorney to review the lease, she ultimately signed documents consisting of a rental application and a standard Texas Apartment Association ("TAA") lease contract. Once she moved into her apartment, White's parents purchased and gifted her a new washer and dryer. White connected the washer herself, but when she plugged the cord she had purchased for the dryer into the outlet, the outlet sparked. White then asked Sienna Ridge for assistance in connecting the dryer, and, about a week after she moved into the apartment, a Sienna Ridge maintenance man installed the dryer. Several days later, while using the dryer, a fire started inside the dryer. White's entire belongings perished in the fire, and her apartment and several adjacent units were destroyed.

White testified she had used the dryer two or three times prior to the day the fire occurred and experienced no problems. On the day of the fire, White placed several items inside the dryer, including two decorative pillows, sheets, a duvet, a blanket, and a bed pillow. After starting the dryer, she sat down to watch television and immediately began to smell a "burning smell" coming from the laundry area. She opened the dryer's door and saw flames inside the drum. She attempted to extinguish the flames with a fire extinguisher, but was unsuccessful because she was not able to get it to work. She left her apartment to call 911.

Sienna Ridge filed a damage claim with its insurance carrier, Philadelphia, which in turn, adjusted and paid the claim. Phil-

adelphia then sued White for damages in excess of $83,000, asserting its subrogation rights against her. Philadelphia's initial claims were based on negligence. Philadelphia amended its pleadings to add breach of contract, alleging White violated paragraph 12 of the TAA lease by failing to timely reimburse Sienna Ridge for the damage caused by the fire.

The case was submitted to the jury on both the negligence and breach of contract claims. The jury found White was not negligent, but found she breached the lease contract, and awarded Philadelphia its claimed damages, plus attorney's fees. Thereafter, Philadelphia filed a motion for entry of judgment, and White filed a motion for JNOV. After a hearing on these motions and additional briefing, the trial court granted White's motion for JNOV and denied Philadelphia's motion for entry of judgment. Ultimately, the court signed the final judgment entering a take-nothing judgment in favor of White. Philadelphia then perfected this appeal.

## STANDARD OF REVIEW

■ A trial court may grant a JNOV if a directed verdict would have been proper because a legal principle precludes recovery. *Fort Bend Cnty. Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 394 (Tex.1991); *AMS Const. Co., Inc. v. K.H.K. Scaffolding Houston, Inc.,* 357 S.W.3d 30, 40 (Tex. App.-Houston [1st Dist.] 2011, pet. dism'd); Tex.R. Civ. P. 301. In her motion for JNOV and on appeal, White contends paragraph 12 of the TAA lease is unenforceable as a matter of law because it: (1) is ambiguous; (2) lacks consideration; (3) violates the Texas Property Code; (4) is void on public policy grounds; (5) is unconscionable; (6) fails to meet the fair notice requirements of risk-shifting contractual clauses; and (7) improperly creates a new theory of strict liability. Because the trial

court did not specify the grounds for granting White's JNOV motion, we must uphold the trial court's ruling if any of the stated grounds in the motion uphold the judgment. *Sbrusch,* 818 S.W.2d at 394. It is Philadelphia's burden to discredit the grounds White raised in her motion. *Id.* Because we believe the grounds of ambiguity and void on public policy grounds are dispositive, we address only those two grounds for the trial court's JNOV.

## AMBIGUITY

Paragraph 12 of the TAA lease states as follows:

DAMAGES AND REIMBURSEMENT. **You must promptly pay or reimburse us for loss, damage, consequential damages, government fines or charges, or cost of repairs or service in the apartment community due to:** a violation of the Lease Contract or rules; improper use; negligence; other conduct by you or your invitees, guests or occupants; or **any other cause not due to our negligence or fault.....**

[Emphasis added.]

■ White first argues paragraph 12's catch-all provision—"or any other cause not due to our negligence or fault"— is ambiguous. Whether a contract is ambiguous is a question of law for the court. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex.2003). In determining whether the contract is ambiguous, courts look at the contract as a whole, in light of the circumstances present when the parties entered into the contract. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.,* 121 S.W.3d 742, 746 (Tex.2003). When a contract is found to be ambiguous, the parties' intent is a determination for the factfinder. *Coker v. Coker,* 650 S.W.2d 391, 394–95 (Tex. 1983); *see Lenape Res. Corp. v. Tenn. Gas Pipeline Co.,* 925 S.W.2d 565, 574 (Tex.

1996) (noting if meaning of contract is uncertain, or is reasonably susceptible to more than one interpretation, then it is ambiguous and its meaning must be resolved by finder of fact). When a written contract is so worded that it can be given a certain definite legal meaning or interpretation, it is not ambiguous, and the court construes it as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex.2003). In construing a contract, we look to ascertain the parties' intent as expressed in the instrument. *See Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex.2006).

■ We conclude the language of paragraph 12 is not ambiguous-"You must promptly pay or reimburse us for loss, damage, consequential damages . . . due to . . . other conduct by you or your invitees, guests or occupants; or any other cause not due to our negligence or fault." We hold that under the plain language of the paragraph, only one interpretation can be construed: White is required to pay Sienna Ridge for any damages to the apartment complex as long as the apartment complex was not at fault. Accordingly, the trial court could not have granted White's motion for JNOV based on the ground of ambiguity. Because we conclude the challenged portion of paragraph 12 is not ambiguous, we next consider whether the language violates public policy.

## VOID ON PUBLIC POLICY GROUNDS

■ Philadelphia asserts the trial court erred in granting White's motion for JNOV and overturning the jury's finding that White breached paragraph 12 of her apartment lease. Philadelphia argues paragraph 12's catch-all provision rendered White liable for all the damage caused by the fire that started in her dryer. Philadelphia presented evidence at trial claiming there were only two causes of the fire: White's misuse of the dryer or a dryer defect. Despite the jury finding White was not negligent, Philadelphia argues that because White owned the dryer, she is contractually liable, pursuant to paragraph 12, to pay Sienna Ridge for all damages, including those damages related to areas outside of her apartment and adjacent units. Philadelphia contends her failure to pay Sienna Ridge for the fire damage constituted a breach of the lease contract.

White focuses her public policy argument on the language of paragraph 12 that states a tenant "must promptly pay or reimburse [Sienna Ridge] for loss, damage, consequential damages, government fines or charges, or cost of repairs or service in the apartment community due to . . . *any . . . cause not due to [Sienna Ridge's] negligence or fault.*" [Emphasis added.] White argues this language is against public policy because it makes a tenant liable for damage to the entire apartment complex for accidental losses, acts of God, criminal acts of another, or any other act of someone or something unassociated with the tenant or Sienna Ridge. We agree.

■ We recognize Texas's strong public policy in favor of preserving the freedom of contract. TEX. CONST. art. I, § 16 ("No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."); *see also Churchill Forge, Inc. v. Brown*, 61 S.W.3d 368, 370 (Tex.2001) (observing that competent parties in Texas have the utmost liberty of contracting). "We also recognize the importance of the 'indispensable partner' to the freedom of contract: contract enforcement." *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 664 (Tex.2008). However, freedom of contract is not unbound-

ed. *Id.* "As a rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy." *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 129 & n. 11 (Tex. 2004). A court can declare a contract void as against public policy and refuse to enforce it. *In re Lee,* 411 S.W.3d 445, 464 n. 9 (Tex.2013) ("courts may refuse to enforce contracts that are either expressly or impliedly prohibited by statute or by public policy"). Whether a contract violates public policy is a question of law that we review *de novo. Johnson v. Structured Asset Servs., LLC,* 148 S.W.3d 711, 726 (Tex. App.-Dallas 2004, no pet.).

The Legislature determines public policy through the statutes it passes. *Fairfield Ins.,* 246 S.W.3d at 665. The Legislature has determined public policy regarding limitations on the freedom of a landlord and tenant to contract in the Texas Property Code, which governs residential tenancies. *Churchill Forge,* 61 S.W.3d at 370.[1] The provisions of Property Code Chapter 92 do "not affect any other right of a landlord or tenant under contract, statutory law, or common law that is consistent with the purposes of this subchapter...." TEX. PROP. CODE ANN. § 92.061 (West 2007). However, the *Churchill Forge* Court agreed with the co-tenant's argument that the general principle that competent parties in Texas "shall have the utmost liberty of contracting" "has been altered by the Legislature [in] Chapter 92 of the Texas Property Code." *Id.* at 370.

Chapter 92 permits the parties to contract over who will pay for repairs when the tenant causes damage. *Churchill Forge,* 61 S.W.3d at 372. Under section 92.052, "[u]nless the condition was caused by normal wear and tear, the landlord does not have a duty ... to repair or remedy a condition caused by: (1) the tenant; (2) a lawful occupant in the tenant's dwelling; (3) a member of the tenant's family; or (4) a guest or invitee of the tenant." TEX. PROP.CODE § 92.052(b). Thus, Subchapter B imposes no duty on a landlord to bear the cost of repairing damage allegedly caused by a tenant. *Churchill Forge,* 61 S.W.3d at 372.

The Property Code also "specifically authorizes the parties to shift by contract costs of repairs for certain damages from the landlord to the tenant irrespective of whether the damage was caused by the tenant." *Id.* at 372–73. But, these "certain damages" are limited. Under section 92.006(f), a landlord and tenant "may agree that, except for those conditions caused by the negligence of the landlord, the tenant has the duty to pay for repair of the following conditions that may occur during the lease term or a renewal or extension: (1) damage from wastewater stoppages caused by foreign or improper objects in lines that exclusively serve the tenant's dwelling; (2) damage to doors, windows, or screens; and (3) damage from windows or doors left open." TEX. PROP. CODE § 92.006(f). "By adding subsection (f), the Legislature permitted landlords and tenants to bargain over who would bear the cost of repairing these [three] specific conditions, typically tenant-caused, without requiring landlords to show that they were tenant-caused." *Churchill Forge,* 61 S.W.3d at 372.

In *Churchill Forge,* the Court noted that "[l]egislative permission to contract under certain circumstances does not nec-

---

1. In *Churchill Forge,* the question was "whether by statute or the common law, a commercial landlord is prohibited from contractually obligating its tenant to be responsi- ble for damages caused by the tenant, the tenant's occupant, or guest." 61 S.W.3d at 369.

essarily imply that contracting under other circumstances is prohibited." *Id.* at 371.[2] "Certainly, given this State's strong commitment to the principle of contractual freedom, we should hesitate to infer a general prohibition from a statutory clause granting specific permission to contract." *Id.* However, there is no need to infer because the Legislature "explicitly identified the prohibition it intended to enforce: 'A landlord's duties and the tenant's remedies under Subchapter B, which covers conditions materially affecting the physical health or safety of the ordinary tenant, may not be waived except as provided in Subsections (d), (e) and (f) of this section.'" *Id.* (quoting Tex. Prop.Code § 92.006(c)). But, after considering the cost-shifting provisions contained in the Property Code, the Court reached several conclusions. First, considered together, section 92.006(c) and (e)[3] dictate a commercial landlord cannot ask a tenant to pay for repairs the landlord has a duty to make. *Id.* at 373. "Excepted from that dictate is subsection (f), under which there are three specific kinds of repairs that the parties can, by contract, shift the duty to pay for from the landlord to the tenant." *Id.* "And not covered by that dictate are those agreements between the parties concerning damages for which the landlord

has no duty to repair, i.e., tenant-caused damages." *Id.*

We believe the public policy of Texas, as expressed in the Property Code, is that tenants may be held responsible for damages they, their cotenants, or their guests cause, and a landlord and tenant have the freedom to contractually agree a tenant will pay for specific kinds of repair without a showing that the tenant caused the damage. *See Churchill Forge,* 61 S.W.3d at 370–73. Absent from this legislatively-expressed public policy is the imposition of contractual liability on a tenant for any and all damages to the apartment complex whenever the damages are not caused by the landlord. In this case, all that is required to impose liability on a tenant is that the damage not be caused by Sienna Ridge.

Here, the jury determined White's negligence did not proximately cause damages to Sienna Ridge. However, under paragraph 12, White is required to pay Sienna Ridge for any damages to the apartment complex as long as the apartment complex was not at fault. We conclude paragraph 12's broad imposition of liability on a tenant for damage not caused by Sienna Ridge is void because it violates public policy as expressed in the Property Code.[4]

---

**2.** This statement by the Court was made in the context of the Court considering the co-tenant's argument that Churchill Forge could not enforce its lease provision and hold her liable for fire damage to the apartments caused by her cotenant because it did not meet the conditions of subsection (e). In that case, the lease held the tenant liable only for damages caused by the tenant's or any guest's or occupant's improper use or negligence, and for certain specified damages (1) to doors, windows, or screens; (2) from windows or doors left open; and (3) from wastewater stoppages caused by improper objects in lines exclusively serving the tenant's apartment.

**3.** Subsection (e), which allows a landlord and tenant to "agree for the tenant to repair or remedy, at the tenant's expense any condition covered by Subchapter B," does not apply here. Subsection (e) applies if "at the beginning of the lease term the landlord owns only one rental dwelling...." Tex. Prop.Code § 92.006(e)(1). Sienna Ridge is an apartment complex.

**4.** An important distinction between the lease provision in *Churchill Forge* and the lease provision we consider in this appeal is that the *Churchill Forge* lease did not contain the broad language holding a tenant liable for damages "due to ... any other cause not due to [the landlord's] negligence or fault."

## CONCLUSION

Because the trial court's JNOV can be upheld on the ground that paragraph 12 violates public policy, we affirm the trial court's judgment.

Dissenting opinion by MARIALYN BARNARD, Justice.

Dissenting Opinion by: MARIALYN BARNARD, Justice, dissenting.

Because I believe the majority errs in holding the complained of portion of the lease violates public policy, I respectfully dissent. Having reviewed White's complaints about the lease, I would hold they are without merit and would reverse the trial court's judgment and remand the matter to the trial court for entry of judgment in favor of Philadelphia.

### ANALYSIS

As noted by the majority, Philadelphia contends the trial court erred in granting White's motion for JNOV and overturning the jury's finding that White breached her apartment lease. In particular, Philadelphia alleges White breached paragraph 12 of the TAA lease which states:

DAMAGES AND REIMBURSE-MENT. You must promptly pay or reimburse us for loss, damage, consequential damages, government fines or charges, or cost of repairs or service in the apartment community due to: a violation of the Lease Contract or rules; improper use; negligence; other conduct by you or your invitees, guests or occupants; *or any other cause not due to our negligence or fault.* You will indemnify and hold us harmless from all liability arising from the conduct of you, your invitees, guests, or occupants, or our representatives who perform at your requested services not contemplated in this Lease Contract. Unless the dam-

age or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacements and damage to the following if occurring during the Lease Contract term or renewal period: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

(emphasis added).

Philadelphia argues the catch-all provision in the first part of paragraph 12—"or any other cause not due to our negligence or fault"—rendered White liable for the damage caused by the dryer fire. Philadelphia argues that based on the evidence presented at trial, there were only two possibilities for the fire: White's misuse of the dryer, or a defect in the dryer. Even though the jury found White was not negligent, Philadelphia argues that because White owned the brand new dryer, and the dryer fire admittedly caused damages, she was required under paragraph 12 of the TAA lease to pay Sienna Ridge for all damages. Philadelphia contends her failure to pay Sienna Ridge constituted a breach of contract, as found by the jury.

In her motion for JNOV and on appeal, White contends paragraph 12 of the TAA lease is unenforceable as a matter of law because it: (1) is ambiguous; (2) lacks consideration; (3) violates the Texas Property Code; (4) is void on public policy grounds; (5) is unconscionable; (6) fails to meet the fair notice requirements of risk-shifting contractual clauses; and (7) improperly creates a new theory of strict liability.[1] I do not believe the lease is

---

1. White made the same arguments in her

supplemental motion for summary judgment

unenforceable on any of the grounds asserted by White. Given that the majority bases its decision to affirm the trial court's judgment on White's public policy argument, I will address that issue first.[2]

### VIOLATION OF TEXAS PROPERTY CODE, PUBLIC POLICY, AND FAIR NOTICE

White argues paragraph 12 of the TAA lease violates public policy, the fair notice doctrine, and the Texas Property Code. The majority agrees with White and holds the complained of portion of paragraph 12 violates public policy.

The majority contends the Texas Legislature determined public policy regarding limitations on the freedom of landlords and tenants to contract when it enacted section 92.006. *See* Majority Op. at 257. According to the majority, the policy expressed is that landlords and tenants may contract to hold tenants responsible for damages if the tenant, the tenant's occupant, or the tenant's guest causes the damage, *see Churchill Forge, Inc. v. Brown*, 61 S.W.3d 368 (Tex.2001), and landlords and tenants can contractually agree a tenant will pay for the specific repairs as stated in section 92.006(f). *Id.* at 373. Thus, according to the majority, there exist only two areas in which landlords and tenants are at liberty to contractually shift responsibility for damages without violating public policy. I strongly disagree.

In my opinion there is nothing in section 92.006 to suggest the Legislature intended to limit the ability to contractually shift responsibility to the two situations described by the majority. Moreover, this is not what the supreme court held in *Churchill Forge*. In that case, the supreme court simply recognized that it was permissible under section 92.006(e) for landlords and tenants to shift responsibility when the tenant or his occupant causes the damage or for those specific damages set forth in section 92.006(f). However, the supreme court in no way held these were the only situations in which such parties could contractually agree to shift responsibility for damages. In fact, the supreme court specifically stated in *Churchill Forge*:

> Legislative permission to contract under certain circumstances does not necessarily imply that contracting under other circumstances is prohibited. Certainly, given this State's strong commitment to the principle of contractual freedom, we should hesitate to infer a general prohibition from a statutory clause granting specific permission to contract.

61 S.W.3d at 371.

This is exactly what the majority has done—inferred a blanket prohibition on other landlord-tenant responsibility shifting contracts from a statute that permits certain types of such contracts. The majority contends that because the Legislature has statutorily determined public policy permits landlords and tenants to contractually shift responsibility for damages in two specific instances, these are the *only* two instances for which such parties may contractually shift responsibility. The supreme court specifically prohibited this very inference in *Churchill Forge* based on this State's strong commitment to, and public policy in favor of, contractual liberty. *Id.*

Moreover, I would point out, as I do with regard to White's unconscionability

---

and in her motion for directed verdict. Both motions were denied.

**2.** I will not address White's claim that the lease is unenforceable because it is ambigu-

ous. The majority addresses the issue and, in my opinion, correctly holds the lease is not ambiguous.

argument below, White had the right to review the lease and consult with an attorney before she signed it. White admitted she read the entire lease, which would include paragraph 12, before she signed it. There is nothing in the record to show White took issue with the responsibility shifting portion of the lease or asked for an alteration based on a concern that she might be held liable simply because something happened that was not the fault of the apartment complex.

Absent strong public policy reasons for holding otherwise, I believe the public policy of preserving contractual freedom trumps White's claim in this case. Accordingly, I disagree with the majority and would hold paragraph 12 of the TAA lease in this case does not violate public policy or the Texas Property Code.

White also contends the lease provision in question is void based on the fair notice doctrine. This very argument was rejected by the court in *Churchill Forge*. The court noted the fair notice doctrine covers "contractual provisions relieving a party in advance of its own negligence." *Id.* at 373. That is, the court explained, the doctrine applies only when parties seek release or indemnity from the consequences of their own negligence. *Id.* at 373–74. In this case, Philadelphia did not sue White for indemnity and is not asserting any rights against White under a release. Therefore, White's fair notice argument is inapplicable. *See id.* at 374.

Accordingly, I do not believe White's arguments regarding violation of public policy, the Texas Property Code, or the fair notice doctrine support the trial court's granting of the motion for JNOV. I believe the majority has misconstrued section 92.006 and the supreme court's statements in *Churchill Forge*, resulting in a decision contrary to that court's holdings.

## LACK OF CONSIDERATION

White next contends she did not receive any "consideration" for agreeing to paragraph 12 of the TAA lease. Philadelphia argues that although White pled "lack of consideration," she waived the issue by failing to request the trial court submit the issue to the jury. Moreover, Philadelphia argues that when consideration is lacking, the entire contract is void, not just a portion of it, and White cannot prove the TAA lease lacked consideration.

I first address Philadelphia's waiver argument. Philadelphia argues lack of consideration is an affirmative defense that goes to the question of contract formation, and is a question of fact that must be submitted to the jury. *See Burges v. Mosley,* 304 S.W.3d 623, 628 (Tex.App.-Tyler 2010, no pet.). By failing to submit the issue to the jury, Philadelphia argues White waived the issue and therefore it cannot serve as a basis to uphold the trial court's grant of her motion for JNOV.

Although "failure of consideration is an affirmative defense," *see* Tex.R. Civ. P. 94, lack of consideration, as alleged here, is not. *See Construction Fin. Servs., Inc. v. Chicago Title Ins. Co.,* No. 04–12–00375–CV, 2013 WL 1846613 at *18, n. 8 (Tex. App.-San Antonio May 1, 2013, pet. filed) (mem. op.). Lack of consideration is not an affirmative defense because it does not provide an independent reason to file against the plaintiff; rather, it goes directly to the plaintiff's cause of action. *Id.* Furthermore, this court has held that what constitutes consideration is a question of law. *Brownwood Ross Co. v. Maverick Cnty.,* 936 S.W.2d 42, 45 (Tex.App.-San Antonio 1996, writ denied). Therefore, I would hold the failure to submit the issue to the jury did not constitute waiver.

White asserts there was a lack of consideration with regard to the TAA lease.

Consideration is a fundamental element of every valid contract. *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 659 (Tex.2006); *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408 (Tex.1997), *superseded by statute on other grounds as stated in Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 593 (Tex.2001). Consideration is a bargained-for exchange of promises or return performance and consists of benefits and detriments to the contracting parties. *McLernon v. Dynegy, Inc.*, 347 S.W.3d 315, 335 (Tex.App.-Houston [14th Dist.] 2011, no pet.) (citing *Johnson*, 209 S.W.3d at 659). Lack of consideration refers to a contract that lacks mutuality of obligation. *Fed. Sign*, 951 S.W.2d at 409. However, the existence of a written contract presumes consideration for its execution. *Frequent Flyer Depot, Inc. v. American Airlines, Inc.*, 281 S.W.3d 215, 224 (Tex. App.-Fort Worth 2009, pet. denied).

The supreme court has held that by signing a contract, a party is presumed to have read and understood its contents. *See In re Prudential Co. of Am.*, 148 S.W.3d 124, 134 (Tex.2004); *see also Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex.1996) (holding Texas law presumes party who signs contract has read it and knows of its contents). Our review of the TAA lease signed by White shows it contains mutuality of obligations between Sienna Ridge and White. For example, the TAA lease required White to pay Sienna Ridge $845.00 per month in return for Sienna Ridge permitting her to live in an apartment on its premises. The lease also includes a list of responsibilities for the owner of the property and the resident, including Sienna Ridge's responsibility to "keep common areas reasonably clean," "maintain fixtures, hot water, heating, and A/C equipment," in return for White's responsibility to pay rent and a deposit, among others. Therefore, I would hold

there was no lack of consideration related to White's signing of the TAA lease. *See American Airlines, Inc.*, 281 S.W.3d at 224. Accordingly, I do not believe the trial court could have granted White's JNOV based on lack of consideration.

## UNCONSCIONABILITY

White also argues paragraph 12 of the TAA lease is unconscionable because it is a contract of adhesion, and she had no choice but to sign the lease. I disagree.

A contract is unenforceable if it is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract. *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex.2008). Whether unconscionability exists in a contract is a question of law for the court. *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 562 (Tex.2006). Unconscionability is determined in light of a variety of factors aimed to prevent oppression and unfair surprise; "in general, a contract will be found unconscionable if it is grossly one-sided." *In re Poly-America, L.P.*, 262 S.W.3d at 348.

In this case, the evidence shows White had the right to review the lease contract before she signed it. In fact, there was a statement in White's rental application, stating she could consult an attorney in reviewing her lease. White testified she read the entire rental application before signing it. White testified she did not feel the need to consult with an attorney prior to submitting the rental application and did not have any questions about the application. White does not claim she is illiterate or failed to read the lease. Therefore, I would hold White has failed to show the TAA lease was "grossly one-sided". *See In re Poly-America, L.P.*, 262 S.W.3d at 348. Accordingly, the unconscionability argument could not provide the trial court

with a basis to grant White's motion for JNOV.

## STRICT LIABILITY

Finally, White argues paragraph 12 of the TAA lease creates a "new theory of strict liability" in tort because a tenant would always be strictly liable for damages regardless of cause and origin. Philadelphia contends paragraph 12 has nothing to do with tort liability. Rather, Philadelphia argues it is an example of a landlord's rightful ability to shift cost, risks, and damages to a tenant in a lease.

As stated by the court in *Churchill Forge*, "competent parties in Texas shall have the utmost liberty of contracting." 61 S.W.3d at 370. I would hold paragraph 12 of the TAA exemplifies a parties' ability to shift responsibility from landlord to tenant regarding damages. *See id.* at 372–73. If White disagreed with the provision at the time she signed the lease, she had the opportunity to ask questions and propose changes to the lease contract, as noted in her rental application. White did not use this opportunity, but decided to contract with Sienna Ridge under the terms of the TAA lease. *See id.* at 360. I would hold paragraph 12 of the TAA lease did not create a new theory of strict liability in tort. Accordingly, I do not believe the trial court could have granted White's motion for JNOV on this basis.

## CONCLUSION

As noted above, I disagree with the majority's interpretation of *Churchill Forge,* and I do not believe the complained of portion of paragraph 12 of the lease violates public policy. Based on my review of White's claims with regard to the validity of the lease, I find them without merit and I would therefore reverse the trial court's judgment and remand to the trial court for entry of judgment in favor of Philadelphia.